1

2

3

4

5                    **UNITED STATES DISTRICT COURT**

6                         **DISTRICT OF NEVADA**

7                                  * * *

8    BANK OF AMERICA, N.A.,                    Case No. 2:16-cv-01053-RFB-DJA
     FEDERAL NATIONAL MORTGAGE
9    ASSOCIATION,                                        **ORDER**

10                 Plaintiff,

11        v.

12   MADEIRA CANYON HOMEOWNERS
     ASSOCATION
13   SFR INVESTMENTS POOL 1, LLC
     NEVADA ASSOCIATION SERVICES, INC,
14
                   Defendants.
15

16   **I.      INTRODUCTION**

17         Before the Court are Plaintiffs Bank of America, N.A ("BANA") and Federal National

18   Mortgage Association's ("Fannie Mae") Motion for Partial Summary Judgment, and Defendant

19
     SFR Investments Pool 1, LLC's ("SFR") Motion for Summary Judgment. ECF Nos. 36, 44. For
20
     the following reasons, the Court denies BANA and Fannie Mae's Motion for Partial Summary
21
22   Judgment and grants SFR's Motion for Summary Judgment.

23   **II.     PROCEDURAL BACKGROUND**

24         BANA and Fannie Mae sued Defendants Madeira Canyon Homeowners Association ("the
25
     HOA"), SFR Investments Pool 1, LLC ("SFR") and Nevada Association Services, Inc. ("NAS")
26
27   on May 10, 2016.  ECF No. 1.  Plaintiffs seek declaratory relief that a nonjudicial foreclosure sale

28   conducted in 2013 under Chapter 116 of the Nevada Revised Statutes ("NRS") did not extinguish

Fannie Mae's interest in a Las Vegas property.  Id.  To obtain the relief, Plaintiffs assert the following claims in the Complaint: (1) declaratory relief under 28 U.S.C. § 2201 against SFR; (2) quiet title against SFR; (3) breach of NRS 116.1113 as against the HOA and NAS; (4) wrongful foreclosure against the HOA and NAS; and (5) injunctive relief against SFR.  Id.  NAS answered the complaint on June 3, 2016. ECF No. 7.  On August 25, 2016, the Court administratively stayed the case pending the mandate of Bourne Valley Court Trust v. Wells Fargo Bank. 832 F.3d 1154 (9th Cir. 2016), cert denied 137 S. Ct. 2296 (2017) .  On April 8, 2019, the Court lifted the stay. ECF No. 30. SFR filed its answer on July 2, 2019. ECF No. 38.

On June 24, 2019, Plaintiffs moved for summary judgment. ECF No. 36. The motion was fully briefed. ECF Nos. 46, 48. SFR also moved for summary judgment. ECF No. 44. That motion was also fully briefed. ECF Nos. 45, 49.

## III.     FACTUAL BACKGROUND

The Court makes the following findings of undisputed and disputed facts. [1]

### a.  Undisputed facts

This matter concerns a nonjudicial foreclosure on a property located at 2673 Rimbaud Street, Henderson, Nevada 89044 (the "property").  The property sits in a community governed by the HOA.  The HOA requires the community members to pay community dues.

Nonparty Ronaldo A. Bumbasi borrowed funds from Pulte Mortgage LLC to purchase the property in 2006.  To obtain the loan, Bumbasi executed a promissory note and a corresponding deed of trust to secure repayment of the note.  The deed of trust, which lists Bumbasi as the borrower, Pulte Mortgage LLC as the lender, Lawyers Title of Nevada as the original trustee, and

---

[1] The Court takes judicial notice of the publicly recorded documents related to the deed of trust and the foreclosure as well as Fannie Mae's Single-Family Servicing Guide.  Fed. R. Evid. 201 (b), (d); Berezovsky v. Moniz, 869 F.3d 923, 932–33 (9th Cir. 2017) (judicially noticing the substantially similar Freddie Mac Guide); Lee v. City of Los Angeles, 250 F.3d 668, 690 (9th Cir. 2001) (permitting judicial notice of undisputed matters of public record).

Mortgage Electronic Registration Systems, Inc. ("MERS") as the original beneficiary was recorded on November 30, 2006. MERS substituted nonparty Recontrust Company as trustee under the deed of trust as recorded on October 2, 2008. On July 12, 2010 MERS assigned the Senior Deed of Trust to BAC Home Loans Servicing, LP fka Countrywide Home Loans Servicing.

Bumbasi failed to pay the required HOA dues or his required loan payments. On October 16, 2008, a notice of default and election to sell under deed of trust was recorded. The notice stated that MERS, as beneficiary of record, had executed and delivered to Recontrust Company a written declaration of default and demand for sale, based on Bumbasi's "failure to pay the installment of principal, interest and impound which became due on 07/01/2008" and "does hereby declare all sums secured thereby immediately due and payable." On November 5, 2010, a rescission of election to declare default was recorded that stated as follows:

> "Recontrust Company, N.A., acting as an agent . . . does hereby rescind, cancel and withdraw the Notice of Default and Election to Sell . . . provided however, that this rescission shall not be construed as waiving, curing, extending to, or affecting any default, either past, present or future . . . and it . . . shall be deemed . . .only an election without prejudice not to cause a sale to be made."

From September 10, 2009 through March 2013, a notice of delinquent assessment lien, a notice of default and election to sell, and a notice of foreclosure sale were all recorded by the HOA. On May 10, 2013 SFR purchased the property for $18,000. On June 4, 2019, a second notice of rescission of notice of default and election to sell under deed of trust was recorded. This rescission notice provided that the present beneficiary "does hereby rescind, cancel, withdraw and revoke without prejudice the acceleration of the Note, or Deed of Trust, or both, as referenced in the Notice of Default and Election to Sell Under Deed of Trust listed above." No payments have been made on the underlying loan since June 1, 2008.

///

Federal National Mortgage Association ("Fannie Mae") previously purchased the note and the deed of trust on or about December 1, 2006. While its interest was never recorded under its name, Fannie Mae continued to maintain its ownership of the note and the deed of trust at the time of the foreclosure. BAC Home Loans Servicing, LP fka Countrywide Home Loans Servicing, which merged with BANA in 2011, serviced the note and was listed as the beneficiary of the deed of trust, on behalf of Fannie Mae, at the time of the foreclosure.

The relationship between Fannie Mae and BANA, as Fannie Mae's servicer, is governed by Fannie Mae's Single-Family Servicing Guide ("the Guide"). The Guide provides that servicers may act as record beneficiaries for deeds of trust owned by Fannie Mae. It also requires that servicers assign the deeds of trust to Fannie Mae on Fannie Mae's demand. The Guide states:

> The servicer ordinarily appears in the land records as the mortgagee to facilitate performance of the servicer's contractual responsibilities, including (but not limited to) the receipt of legal notices that may impact Fannie Mae's lien, such as notices of foreclosure, tax, and other liens. However, Fannie Mae may take any and all action with respect to the mortgage loan it deems necessary to protect its ... ownership of the mortgage loan, including recordation of a mortgage assignment, or its legal equivalent, from the servicer to Fannie Mae or its designee. In the event that Fannie Mae determines it necessary to record such an instrument, the servicer must assist Fannie Mae by [ ] preparing and recording any required documentation, such as mortgage assignments, powers of attorney, or affidavits; and [by] providing recordation information for the affected mortgage loans.

The Guide also allows for a temporary transfer of possession of the note when necessary for servicing activities, including "whenever the servicer, acting in its own name, represents the interests of Fannie Mae in ... legal proceedings." The temporary transfer is automatic and occurs at the commencement of the servicer's representation of Fannie Mae. The Guide also includes a chapter regarding how servicers should manage litigation on behalf of Fannie Mae. But the Guide clarifies that "Fannie Mae is at all times the owner of the mortgage note[.]" Finally, under the Guide, the servicer must "maintain in the individual mortgage loan file all documents and system records that preserve Fannie Mae's ownership interest in the mortgage loan."

Finally, the Guide "permits the servicer that has Fannie Mae's [limited power of attorney] to execute certain types of legal documents on Fannie Mae's behalf." The legal documents include full or partial releases or discharges of a mortgage; requests to a trustee for a full or partial reconveyance or discharge of a deed of trust, modification or extensions of a mortgage or deed of trust; subordination of the lien of a mortgage or deed of trust, conveyances of a property to certain entities; and assignments or endorsements of mortgages, deeds of trust, or promissory notes to certain entities.

In 2008, Congress passed the Housing and Economic Recovery Act ("HERA"), 12 U.S.C. § 4511 *et seq.*, which established the Federal Housing Finance Agency ("the Agency"). HERA gave the Agency the authority to oversee Fannie Mae. In accordance with its authority, the Agency placed Fannie Mae under its conservatorship in 2008. Neither FHFA nor Fannie Mae consented to the foreclosure extinguishing Fannie Mae's interest in the property in this matter.

### b. Disputed Facts

The facts in this matter are mostly undisputed. The parties dispute the legal effect of the circumstances.

### IV.    LEGAL STANDARD

Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); accord Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). When considering the propriety of summary judgment, the court views all facts and draws all inferences in the light most favorable to the nonmoving party. Gonzalez v. City of Anaheim, 747 F.3d 789, 793 (9th Cir. 2014). If the movant has carried its burden, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts…. Where the record taken as

a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." Scott v. Harris, 550 U.S. 372, 380 (2007) (alteration in original) (internal quotation marks omitted).  It is improper for the Court to resolve genuine factual disputes or make credibility determinations at the summary judgment stage.  Zetwick v. Cty. of Yolo, 850 F.3d 436, 441 (9th Cir. 2017) (citations omitted).

## V.    DISCUSSION

SFR argues that NRS 106.240 extinguished Plaintiffs' interest in the property prior the foreclosure sale. Nev. Rev. Stat. § 106.240. For the following reasons, the Court agrees.

Section 106.240 provides that:

> The lien heretofore or hereafter created of any mortgage or deed of trust upon any real property, appearing of record, and not otherwise satisfied and discharged of record, shall at the expiration of 10 years after the debt secured by the mortgage or deed of trust according to the terms thereof or any recorded written extension thereof become wholly due, terminate, and it shall be conclusively presumed that the debt has been regularly satisfied and the lien discharged.
> Id.

The Nevada legislature and the Nevada Supreme Court have not explicitly defined the meaning of the term "wholly due." However the Nevada Supreme Court has endorsed by implication the finding that acceleration of a note serves to make the full amount "wholly due." See First Am. Title Ins. Co. v. Coit, 412 P.3d 1088 n.1 (Nev. 2018) (unpublished). As it is undisputed that the borrower made no payment after 2008, any reinstatement provision of the deed of trust was not honored and so the Court finds that Fannie Mae's interest in the property extinguished on October 16, 2018, ten years after the default instrument was recorded.

BANA and Fannie Mae argue that the rescission recorded on November 5, 2010 served to rescind the acceleration. However nowhere in the document is there any statement that the acceleration of the loan has been rescinded. Rather the notice merely states that the beneficiary

chose not to elect to sell at that time. The rescission notice is also careful to note that the rescission shall not be construed as curing any default or altering any rights, remedies or privileges secured to the beneficiary. The Court thus agrees with SFR that more is required in order to show that deceleration of payment was intended. While the Court agrees with BANA that SFR's reliance on a pre-2016 unpublished Nevada Supreme Court decision is without any precedential or persuasive value, BANA can point to no authority or source to support its argument that the Court find in its favor. Furthermore, the recording of a second rescission in June 2019, in which the language is clear that deceleration is intended, leads the Court to infer that even Fannie Mae and BANA were aware of the insufficiency of the first recorded rescission.

Finally, the Court rejects BANA's request that the Court apply equitable tolling to the ten-year period delineated in NRS 106.240. As a preliminary matter, the Court notes that NRS 106.240 is not a statute of limitation, but a statute of repose. A statute of limitation creates "a time limit for suing in a civil case, based on the date when the claim accrued." <u>CTS Corp. v. Waldburger</u>, 573 U.S. 1, 9 (2014) (internal citations omitted). By contrast, a statute of repose "puts an outer limit on the right to bring a civil action." <u>Id</u>. The statute of limitation and the statute of repose serve different purposes. The statute of limitation requires plaintiffs to "pursue diligent prosecution of known claims," and "promote[s] justice by preventing surprises through . . . revival of claims that have been allowed to slumber." <u>Id</u>. Statutes of repose, however, "effect a legislative judgment that a defendant should be free from liability after the legislatively determined period of time." <u>Id.</u> (internal citations omitted). With a statute of repose, the limit is "measured not from the date on which the claim accrues but instead from the date of the last culpable act or omission of the defendant." <u>Id</u>. Under section 106.240, the limit on a party's ability to bring the action is dated from the borrower's failure to cure the default. One of the central distinctions between the statute

of limitation and the statute of repose is the applicability of equitable tolling. "Statutes of repose . . . generally may not be tolled, even in cases of extraordinary circumstances beyond the plaintiff's control." <u>Id</u>. Because NRS 106.240 is a statute of repose, equitable tolling is not available, and the Court declines to use it here.

Based on the forgoing, the Court grants summary judgment in favor of SFR and declares that SFR acquired the property free and clear of Fannie Mae's interest, which was extinguished pursuant to NRS 106.240. The Court finds this holding to be decisive as to all claims in this matter and dismisses the remaining claims and counterclaims as a result.

## VI.     CONCLUSION

**IT IS ORDERED** that Defendant SFR Investments Pool 1, LLC's Motion for Summary Judgment (ECF No. 44) is GRANTED.  The Clerk of the Court is therefore instructed to enter judgment in favor of Defendant SFR Investments Pool 1, LLC. The remaining claims in this matter are dismissed.

**IT IS FURTHER ORDERED** that Plaintiffs Bank of America, N.A. and Federal National Mortgage Association's Motion for Partial Summary Judgment (ECF No. 36) is denied.

**IT IS FURTHER ORDERED** that the lis pendens filed in this case (ECF No. 4), is expunged.

/ / /

/ / /

/ / /

IT IS FURTHER ORDERED that the cash deposit made by Bank of America is returned with interest to the Legal Owner named in the certificate of cash deposit. (ECF No. 19).

DATED: November 12, 2019.

_____

**RICHARD F. BOULWARE, II**
**UNITED STATES DISTRICT JUDGE**